UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re

53 STANHOPE LLC, et al.,[1]

                              Debtors.
----------------------------------------------------------------x
BROOKLYN LENDER LLC,

                              Appellant,              **OPINION & ORDER**

   – against –

                                                                         No. 21-CV-5177 (CS)

D & W REAL ESTATE SPRING LLC and
MESEROLE AND LORIMER LLC,

                              Appellees.
----------------------------------------------------------------x
BROOKLYN LENDER LLC,

                              Appellant,

   – against –

                                                                        No. 21-CV-2807 (CS)
                                                                         No. 21-CV-5867 (CS)

53 STANHOPE LLC,

                              Appellee.
----------------------------------------------------------------x

Appearances:

Jennifer S. Recine
David S. Rosner

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 53 Stanhope LLC (4645); 55 Stanhope LLC (4070); 119 Rogers LLC (1877); 127 Rogers LLC (3901); 325 Franklin LLC (5913); 618 Lafayette LLC (5851); C & YSW, LLC (2474); Natzliach LLC (8821); 92 South 4th St LLC (2570); 834 Metropolitan Avenue LLC (7514); 1125-1133 Greene Ave LLC (0095); APC Holding 1 LLC (0290); D & W Real Estate Spring LLC (4591); Meserole and Lorimer LLC (8197); 106 Kingston LLC (2673); Eighteen Homes LLC (8947); 1213 Jefferson LLC (4704); and 167 Hart LLC (1155) (collectively, the "Debtors").

Matthew B. Stein
Andrew H. Elkin
Tiffany L. Ho
Kasowitz Benson Torres LLP
New York, NY
*Counsel for Appellant*

Andrea J. Caruso
John Cahalan
Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone LLP
Brooklyn, NY
*Counsel for Debtors-Appellees*

Mark Frankel
Backenroth Frankel & Krinsky, LLP
New York, NY
*Counsel for Debtors-Appellees*

Seibel, J.

Before the Court are the appeals of Appellant Brooklyn Lender LLC ("Brooklyn Lender"), (21-CV-2807 ECF No. 1; 21-CV-5177 ECF No. 1; 21-CV-5867 ECF No. 1), from three rulings of United States Bankruptcy Judge Robert D. Drain: (1) a February 19, 2021 bench ruling and order in which he disallowed or limited certain items of interest sought by Appellant, (21-CV-2807 ECF Nos. 1-1 to 1-2), (2) the June 10, 2021 Amended Order Confirming Chapter 11 Plan of D & W Real Estate Spring LLC and Meserole and Lorimer LLC, (21-CV-5177 ECF No. 1-1), and (3) the June 11, 2021 Order Confirming Joint Chapter 11 Plan for 53 Stanhope LLC, 325 Franklin LLC, 618 Lafayette LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave LLC, APC Holding 1 LLC, Eighteen Homes LLC, and 1213 Jefferson LLC, (21-CV-5867 ECF No. 1-1).

For the following reasons, the appeals are dismissed as equitably moot.

I.    **BACKGROUND**

I relate only the facts relevant to the disposition of these matters. From 2012 to 2016, the Debtors took out 14 loans from Signature Bank ("Signature") secured by mortgages covering 31 separate properties (the "Mortgages"). (*See* Bankr. ECF Nos. 208-1 to 208-19.)[2] On May 17, 2017, Signature assigned the Mortgages to Brooklyn Lender, (2807 App'x at 17-21 to 17-22 ¶ 38), and shortly thereafter, Brooklyn Lender sent the Debtors notices of events of default arising from alleged violations of the terms of the loan agreements, including false and misleading representations made by the Debtors to Signature regarding their ownership, (*id.* at 17-22 ¶ 39). In June 2017, Brooklyn Lender informed the Debtors that the alleged defaults accelerated the Mortgages and demanded payment in full. (*Id.*) In October 2017, Brooklyn Lender filed 14 foreclosure actions in state court, (*id.* at 17-24 ¶ 43), and while the cases were pending, the Debtors filed voluntary petitions for relief under chapter 11 of Title II of the United States Bankruptcy Code, which were consolidated under docket number 19-BK-23013, (Bankr. ECF Nos. 1, 6).

On August 1, 2019, the Debtors filed a Plan of Reorganization, (Bankr. ECF No. 29), and Disclosure Statement, (Bankr. ECF No. 30), to which Brooklyn Lender objected, (Bankr. ECF No. 36). On January 21, 2020, the Debtors filed an Amended Plan of Reorganization, (Bankr. ECF No. 93), and Amended Disclosure Statement, (Bankr. ECF No. 94). After a confirmation hearing was held in August 2020, the Bankruptcy Court issued a modified bench ruling on February 19, 2021, granting in part and denying in part Debtors' objections to Brooklyn Lender's

---

[2] "Bankr. ECF No." refers to documents filed in the United States Bankruptcy Court for the Southern District of New York under docket number 19-BK-23013. "2807 App'x" refers to documents in the appendix to Brooklyn Lender's brief in this Court under docket number 21-CV-2807. "5177 App'x" refers to documents in the appendix to Brooklyn Lender's brief in this Court under docket number 21-CV-5177.

claims, and disallowing several of Brooklyn Lender's claims for default interest, (5177 App'x at 4-1 to 4-52).

Following the bench ruling, the Debtors proposed, and the Bankruptcy Court confirmed, three separate chapter 11 plans of reorganization. First, on June 10, 2021, (*id.* at 13-1 to 13-10), the Bankruptcy Court confirmed the plan (the "D & W Plan") that had been proposed by D & W Real Estate Spring LLC and Meserole and Lorimer LLC, (collectively, the "D & W Debtors"), (*id.* at 6-27 to 6-48). The D & W Plan involved refinancing the loans on the D & W Debtors' properties, listed below, through Maguire Capital Group ("Maguire") to permit the D & W Debtors to pay their outstanding claims, including to Brooklyn Lender. (*Id.* at 6-50 to 6-77.)

| Address | Values (as of March 2021)* |
|---|---|
| 130 South 2nd Street, Brooklyn, NY 11249 | $3,130,435 |
| 318 Bedford Ave, Brooklyn, NY 11249 | $3,916,449 |
| 740 Driggs Ave, Brooklyn, NY 11211 | $1,923,024 |
| 144 Huntington Street, Brooklyn, NY 11231 | $968,291 |
| 68 Carroll Street, Brooklyn, NY 11231 | $1,098,455 |
| 342 Rodney Street, Brooklyn, NY 11211 | $2,685,804 |
| 178 Meserole Street, Brooklyn, NY 11206 | $7,421,345 |
| 180 Meserole Street, Brooklyn, NY 11206 | |
| 182 Meserole Street, Brooklyn, NY 11206 | |
| 440 Lorimer Street, Brooklyn, NY 11206 | $1,394,734 |
| **Total** | **$22,538,537** |
| **Payoff Balance as of May 31, 2021** | **$14,003,584** |
| *Rosewood Realty Group | |

(*Id.* at 6-4.)

Second, on June 11, 2021, (Bankr. ECF No. 285), the Bankruptcy Court confirmed the plan (the "53 Stanhope Plan") that had been proposed for 53 Stanhope LLC, 325 Franklin LLC, 618 Lafayette LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave LLC, APC Holding 1 LLC, Eighteen Homes LLC, and 1213 Jefferson LLC, (collectively, the "53 Stanhope Debtors"), (Bankr. ECF No. 245). The 53 Stanhope Plan provided for the sale

4

of the following properties and use of the sale proceeds to pay the 53 Stanhope Debtors' creditors, including Brooklyn Lender:

| Debtor | Property | Value* | Estimated Payoff (as of 5/31/21) |
|---|---|---|---|
| 53 Stanhope LLC<br>325 Franklin LLC<br>(Joint Owners) | 53 Stanhope Street, Brooklyn, NY 11221<br>325 Franklin Ave, Brooklyn, NY 11238 | $2,991,139.00 | $3,783,874.79 |
| 618 Lafayette LLC | 618 Lafayette Avenue, Brooklyn, NY 11216 | $1,721,559.00 | $2,327,944.70 |
| Eighteen Homes LLC | 263 18th Street, Brooklyn, NY 11215 | $1,680,504.00 | $1,472,741.11 |
| 1213 Jefferson LLC | 1213 Jefferson Ave, Brooklyn, NY 11221 | $1,395,691.00 | $1,412,446.28 |
| 92 South 4th LLC<br>834 Metropolitan LLC<br>(Joint Owners) | 92 South 4th Street, Brooklyn, NY 11249<br>834 Metropolitan Ave, Brooklyn, NY 11211 | $4,503,580.00 | $3,019,989.23 |
| 1125-1131 Greene Avenue, LLC | 1125 Greene Ave, Brooklyn, NY 11221<br>1127 Greene Ave, Brooklyn, NY 11221<br>1129 Greene Ave, Brooklyn, NY 11221<br>1131 Greene Ave, Brooklyn, NY 11221<br>1133 Greene Ave, Brooklyn, NY 11221 | $5,571,886.00 | $4,326,691.67 |
| APC Holding 1 LLC | 568 Willoughby Avenue, Brooklyn, NY 11206 | $2,098,539.00 | $2,111,649.92 |
| **Total** | | **$19,962,898.00** | **$18,455,337.70** |

*Rosewood Realty Group

(*Id.* at 5.) On March 31, 2022, the Bankruptcy Court approved the sale of each of the properties involved in the 53 Stanhope Plan. (Bankr. ECF Nos. 384-392.)

Third, on October 22, 2021, (Bankr. ECF No. 323), the Bankruptcy Court confirmed the plan (the "55 Stanhope Plan") that had been proposed by 55 Stanhope LLC, 119 Rogers LLC, 127 Rogers LLC, C & YSW, LLC, Natzliach LLC, 106 Kingston LLC, and 167 Hart LLC (collectively, the "55 Stanhope Debtors"), (Bankr. ECF No. 312). Like the D & W Plan, the 55 Stanhope Plan refinances the loans on the 55 Stanhope Debtors' properties, listed below, through Maguire to permit the 55 Stanhope Debtors to pay their outstanding claims, including to

Brooklyn Lender.  (*Id.* at 29-38.)[3]

| # | Address | Entity | Value* | Estimated Loan Balances (As of 10/31/21) |
|---|---|---|---|---|
| 1 | 55 Stanhope Street, Brooklyn, NY 11221 | 55 Stanhope LLC | $2,367,747.00 | $1,882,729.64 |
| 2 | 106 Kingston Avenue, Brooklyn, NY 11213 | 106 Kingston LLC | $1,480,807.00 | $684,869.43 |
| 3 | 119 Rogers Avenue, Brooklyn, NY 11216 | 119 Rogers LLC | $2,004,728.00 | $1,912,193.81 |
| 4 | 127 Rogers Avenue, Brooklyn, NY 11216 | 127 Rogers LLC | $2,434,088.00 | $1,935,738.73 |
| 5 | 167 Hart Street, Brooklyn, NY 11206 | 167 Hart LLC | $1,417,864.00 | $733,151.53 |
| 6 | 107 South 3rd Street, Brooklyn, NY 11249 | C & YSW, LLC | $2,000,000.00 | $4,572,437.70 |
| 7 | 109 South 3rd Street, Brooklyn, NY 11249 |  | $2,764,640.00 |  |
| 8 | 129 South 2nd Street, Brooklyn, NY 11249 | Natzliach LLC | $1,954,266.00 |  |
|  | **Total** |  | **$16,424,140.00** | **$11,721,120.84** |

(*Id.* at 2.)

On April 1, 2021, Brooklyn Lender appealed the Bankruptcy Court's February 19, 2021 bench ruling and order and sought to reverse the Bankruptcy Court's disallowance of certain of Brooklyn Lender's claims for default interest.  (21-CV-2807 ECF Nos. 1, 5.)

On June 10, 2021, Brooklyn Lender appealed the Bankruptcy Court's confirmation of the D & W Plan on the grounds that (1) it was abuse of discretion to reduce Brooklyn Lender's claimed legal fees and expenses, (2) approval of the D & W Plan legitimized fraud by the D & W Debtors, and (3) it was clear error to determine that the D & W Plan was feasible without evidentiary support.  (21-CV-5177 ECF Nos. 1, 16.)  Brooklyn Lender also filed in the Bankruptcy Court a motion for a stay of the confirmation order of the D & W Plan pending appeal, (Bankr. ECF Nos. 275, 281), and, after that application was denied, (Bankr. ECF No. 286), an emergency motion in this Court to stay the same order, (21-CV-5177 ECF No. 4), which was also denied, (21-CV-5177 ECF No. 14).  Brooklyn Lender appealed that denial to the Second Circuit, which denied an interim administrative stay of the confirmation order, (21-CV-

---

[3] Page references for ECF No. 312 are to the numbers assigned by the Court's Electronic Case Filing system.

5177 ECF No. 15), and ultimately dismissed the appeal as moot on Brooklyn Lender's consent, (21-CV-5177 ECF No. 22).[4]  At the June 23, 2021 conference at which I denied the stay in 21-CV-5177, I ordered the Debtors to file a joint opposition brief and Brooklyn Lender to file a joint reply brief in both 21-CV-2807 and 21-CV-5177.  (*See* 21-CV-5177 Minute Entry dated June 23, 2021.)

On July 8, 2021, Brooklyn Lender appealed the Bankruptcy Court's confirmation of the 53 Stanhope Plan on the ground that it incorporated the Bankruptcy Court's allegedly erroneous denial of default interest in the February 19, 2021 bench ruling and order.  (21-CV-5867 ECF No. 7.)  Because that appeal, 21-CV-5867, is related to and incorporates the briefing in 21-CV-2807, and because 21-CV-2807 and 21-CV-5177 were jointly briefed, I consider all three appeals in one decision.

## II.  LEGAL STANDARD

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court.  "A district court reviews a bankruptcy court's conclusions of law *de novo*, its discretionary decisions for abuse of discretion, and its findings of fact for clear error."  *In re Depietto*, No. 20-CV-8043, 2021 WL 3287416, at *4 (S.D.N.Y. Aug. 2, 2021).  "When reviewing for clear error, [the Court] may reverse only if [it is] left with the definite and firm conviction that a mistake has been committed."  *United States v.*

---

[4] Brooklyn Lender consented to dismissal of the appeal as moot on September 30, 2021 because the exit financing facility had closed on or around June 30, 2021 and payments were subsequently made to creditors.  (Case No. 21-1535 ECF No. 25.)  But Brooklyn Lender argued that "its substantive appeal of the D &W Confirmation Order, pending before the District Court is not moot" because "the most important factor in determining where an appeal is equitably moot upon the substantial completion of a plan is 'whether the appellant sought a stay of confirmation'" and "the Bankruptcy Court determined that effective relief could be fashioned among other things, because this was an uncomplicated plan."  (*Id.* at 2 n.2) (cleaned up).  I address both points below.

*Bershchansky*, 788 F.3d 102, 110 (2d Cir. 2015) (cleaned up). "Thus, if the factual findings of the bankruptcy court are plausible in light of the record viewed in its entirety, this Court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Savage & Assocs., P.C. v. Williams Commc'ns* (*In re Teligent Servs., Inc.*), 372 B.R. 594, 599 (S.D.N.Y. 2007) (cleaned up). And "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (cleaned up).

### III. DISCUSSION

Debtors argue that the appeal of the bench ruling as it relates to the D & W Debtors, and the appeal of the D & W Plan, should be dismissed as equitably moot. (21-CV-5177 ECF No. 20 at 15-18.) For the reasons set forth below, I agree. Additionally, because the Debtors' brief was filed prior to the confirmation of all three plans, as well as Brooklyn Lender's filing of the appeal of the 53 Stanhope Plan, I will also consider whether the appeal of the bench ruling, as it relates to all Debtors, and the appeal of the 53 Stanhope Plan are equitably moot.[5]

Equitable mootness is a prudential doctrine that "allows appellate courts to dismiss bankruptcy appeals 'when, during the pendency of an appeal, events occur' such that 'even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.'" *In re Motors Liquidation Co.*, 829 F.3d 135, 167 (2d Cir. 2016) (quoting *In re*

---

[5] While equitable mootness is a prudential doctrine rather than a jurisdictional one, *see In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 144 (2d Cir. 2005), courts have considered it on their own motion. *See, e.g., In re Ahn*, 794 F. App'x 661, 662 n.1 (9th Cir. 2020) (summary order); *Clark v. S&J Advert., Inc.*, 611 B.R. 669, 675 (E.D. Cal. 2019); *see also In re Metromedia*, 416 F.3d at 143-45 (in absence of request for stay or expedited appeal, issue is not just whether court can order relief without unraveling confirmation plan, but also whether it should, in light of fairness concerns).

*Chateaugay Corp.* ("*Chateaugay II*"), 988 F.2d 322, 325 (2d Cir. 1993)). "Equitable mootness is a doctrine distinct from constitutional mootness, though they have been discussed in the same breath," *In re Metromedia.*, 416 F.3d at 143-44, and its "primary purpose . . . is to give courts a tool to avoid disturbing a reorganization plan once implemented," *In re Windstream Holdings, Inc.*, 838 F. App'x 634, 636 (2d Cir.) (summary order), *cert. denied sub nom. GLM DFW, Inc. v. Windstream Holdings, Inc.*, 142 S. Ct. 226 (2021) (cleaned up). It requires the Court to "carefully balance the importance of finality in bankruptcy proceedings against the appellant's right to review and relief." *In re Charter Commc'ns. Inc.*, 691 F.3d 476, 481 (2d Cir. 2012).

Where, as here, a reorganization plan has been substantially consummated,[6] a court presumes that an appeal of that plan is equitably moot. *In re Windstream*, 838 F. App'x at 636.[7] "A party seeking to overcome that presumption may do so only by demonstrating that five factors – dubbed the *Chateaugay* [*II*] factors – are met." *Id.* Those factors are that: (i) effective relief can be ordered; (ii) relief will not affect the debtor's reemergence; (iii) relief "will not unravel intricate transactions"; (iv) affected third-parties are notified and able to participate in

---

[6] A plan of reorganization is "substantially consummated" upon: "[i] transfer of substantially all of the property proposed by the plan to be transferred; [ii] the reorganized debtor's assumption of the debtor's business; and [iii] commencement of distribution under the plan." *In re Metromedia*, 416 F.3d at 144 (quoting 11 U.S.C. § 1101(2)); *see In re Windstream Holdings, Inc.*, No. 20-CV-4276, 2021 WL 2581301, at *5 (S.D.N.Y. June 23, 2021), *appeal filed*, No. 21-1754 (2d Cir. July 21, 2021).

[7] Brooklyn Lender does not dispute in its brief that D & W Plan has been substantially consummated. (21-CV-5177 ECF No. 21 ("BL Reply") at 5.) Further, I find that the 53 Stanhope and 55 Stanhope Plans are similarly substantially consummated, given that the Bankruptcy Court approved the terms of the sales of all of the properties associated with the 53 Stanhope Plan four months ago, (Bankr. ECF Nos. 384-392), and the refinancing arrangement contemplated in the 55 Stanhope Plan, which largely mirrors that of the D & W Plan, is a 12-month agreement that was approved over nine months ago and thus must have been implemented, (*see* Bankr. ECF No. 323).

the appeal; and (v) appellant diligently sought a stay of the reorganization plan. *In re Charter*, 691 F.3d at 482.

"Although we require satisfaction of each *Chateaugay II* factor to overcome a mootness presumption, we have placed significant reliance on the fifth factor, concluding that a 'chief consideration under *Chateaugay II* is whether the appellant sought a stay of confirmation.'" *In re MPM Silicones, L.L.C.*, 874 F.3d 787, 804 (2d Cir. 2017) (quoting *In re Metromedia*, 416 F.3d at 144). "If a stay was sought, we will provide relief if it is at all feasible, that is, unless relief would 'knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court.'" *In re Metromedia*, 416 F.3d at 144 (quoting *In re Chateaugay Corp.* ("*Chateaugay III*"), 10 F.3d 944, 953 (2d Cir. 1993)).[8]

### A. February 19, 2021 Bench Ruling and Order

First, I consider whether the appeal of the February 19, 2021 bench ruling and order is equitably moot in light of the substantial consummation of the D & W Plan, the 53 Stanhope Plan, and the 55 Stanhope Plan.

In its appeal, Brooklyn Lender seeks to reverse the Bankruptcy Court's disallowance of Brooklyn Lender's claims as to certain default interest. (21-CV-2807 ECF No. 5.) For the D & W Debtors alone, Brooklyn Lender estimates that, as of August 4, 2021, reversal of the

---

[8] Relying on *In re MPM Silicones*, Brooklyn Lender argues that the Court should not consider equitable mootness until after it has resolved the merits. (BL Reply at 5.) Courts in this district, however, regularly reach equitable mootness without first determining the merits. *See, e.g.*, *In re 60 91st St. Corp.*, No. 21-CV-968, 2022 WL 992813 (S.D.N.Y. Mar. 31, 2022); *In re Windstream*, 2021 WL 2581301; *In re Frontier Commc'ns Corp.*, No. 20-CV-6268, 2021 WL 2333627 (S.D.N.Y. June 8, 2021).

order would require the D & W Debtors to pay approximately $16 million to Brooklyn Lender. (BL Reply at 10 n.7.)

The properties at issue have already been subject to sale to[9] or to refinancing by third parties, and Brooklyn Lender does not suggest that those transactions can realistically be unraveled.  Rather, Brooklyn Lender argues that the Court could fashion relief in alternative ways without disturbing the D & W Plan, including:

> (i) D & W Debtors could obtain third-party financing junior to the Maguire Exit Facility with proceeds used to pay Brooklyn Lender; (ii) D & W Debtors' equity holders could provide a cash contribution with proceeds used to pay Brooklyn Lender; (iii) D & W Debtors could issue equity to Brooklyn Lender; (iv) D & W Debtors could issue junior debt to Brooklyn Lender; or (v) the Court could enter a judgment in favor of Brooklyn Lender enforceable against D & W Debtors.

(*Id.* at 18.)  I do not see how any of these forms of relief can be ordered because, as Judge Drain noted, "if Brooklyn Lender's claims are allowed in full, most, if not all, of the Debtors will become insolvent . . . and some, if not all, of the Debtors would not receive a fresh start."  (5177 App'x at 4-18.)  As the Debtors argued before the Bankruptcy Court, "[r]eorganization would be jeopardized [by refinancing additional default interest] . . . because there is not enough value in the Properties in today's market, particularly during the post-Covid credit squeeze."  (Bankr. ECF No. 150 at 52; *cf.* 21-CV-2807 ECF No. 15 at 40 ("Appellees' reorganization was contingent upon refinancing the Brooklyn Lender debt" and "[r]eorganization would be jeopardized by refinancing additional defaault interest"); *id.* ("payment of post-petition default

---

[9] The sale contracts approved by the Bankruptcy Court on March 31, 2022 included provisions that the closings would take place "on the thirtieth calendar day after the issuance of an order from the bankruptcy court approving the Contract and authorizing the sale under its terms."  (*See, e.g.*, Bankr. ECF No. 384-1 at 3.)

11

interest would interfere with the Debtor's reorganization and ultimately payment to creditors").)[10]

Courts in this district have found that requested forms of relief which stand to "jeopardize debtors' emergence" and "knock the props out from under debtors' plan of reorganization" do not satisfy the *Chateaugay II* factors. *See, e.g., In re Windstream Holdings*, 2021 WL 2581301, at *7 (finding appeal equitably moot where "[e]armarking . . . cash for appellants would jeopardize debtors' emergence from bankruptcy by diminishing their reemergent liquidity, and devaluing cash and equity distributions that have already been made to secured and first lien creditors," and that "the alternative relief appellants propose would both knock the props out from under debtors' plan of reorganization and require unwinding the numerous complex transactions forming the Plan"); *In re Delta Air Lines, Inc.*, 374 B.R. 516, 524 (S.D.N.Y. 2007) ("Because of the irreversible financial transactions that have occurred, and because Delta has entered into a whole new set of agreements relating to its use of the Cincinnati/Northern Kentucky Airport as a hub of its operations, the appellants cannot show that a vacatur of the Settlement Order, even if it were possible, would not 'knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court.'") (quoting *In re Metromedia*, 416 F.3d at

---

[10] In support of its argument that relief can be fashioned without disturbing the reorganization, because in its view "D & W Debtors' chapter 11 cases are small" and "this is not a complex case," Brooklyn Lender cites Judge Drain's June 10, 2021 confirmation hearing, in which he stated that "'there is not a major risk of mootness' in this case." (BL Reply at 10 (quoting 21-CV-5177 ECF No. 12-1 at 43:21-22).) But this quote was responding to the assumption that Brooklyn Lender would be seeking "hundreds of thousands of dollars as opposed to . . . a backbreaking amount that would be [of] consequence for the reorganized debtors to pay." (21-CV-5177 ECF No. 12-1 at 43:14-21.) Here, Brooklyn Lender makes clear that it is seeking approximately $16 million from the two D & W Debtors alone. (BL Reply at 10 n.7.)

144).  Accordingly, I find that Brooklyn Lender has not satisfied *Chateaugay II* factors one through three.

Moreover, Brooklyn Lender never sought to stay the confirmation orders of either the 53 Stanhope or 55 Stanhope Plans and so I cannot find that it has satisfied the fifth factor – whether appellant diligently sought a stay of the reorganization plan – either.  Although Brooklyn Lender did file motions to stay the confirmation order of the D & W Plan, (Bankr. ECF No. 275; 21-CV-5177 ECF No. 4; Case No. 21-1535 ECF No. 1), it did not move to stay the other plans, which applied the February 19, 2021 ruling in calculating the default interest that it now seeks to appeal.  Because diligence in seeking a stay is the "chief" consideration about the *Chateaugay II* factors, *In re Metromedia*, 416 F.3d at 144, and Brooklyn Lender failed to do so here for two of three plans, and because I do not believe relief can be ordered in such a way that would not jeopardize the Debtors' emergence or unravel completed transactions, I am satisfied that the appeal of the February 19, 2021 bench ruling and order is equitably moot.

**B.**     **D & W Plan**

Second, I consider whether the appeal of the D & W Plan is equitably moot.  On appeal, Brooklyn Lender seeks reversal of the plan on the grounds that (1) it was abuse of discretion to reduce Brooklyn Lender's claimed legal fees and expenses, (2) approval of the D & W Plan legitimizes fraud on behalf of the D & W Debtors, and (3) it was clear error to determine that the D & W Plan was feasible without evidentiary support.  (21-CV-5177 ECF No. 16 at 18-33.)

Brooklyn Lender's requested relief as to this appeal would necessitate the unwinding of the D & W Plan, which in turn would require the unraveling of the Maguire refinancing agreement for the loans secured by the 10 properties considered in the D & W Plan, implicating the third *Chateaugay II* factor – whether relief "will not unravel intricate transactions."  As of

13

May 12, 2021, the D & W Debtors had spelled out their refinance plan, (5177 App'x at 18-1 to 23-1), and obtained a commitment from Maguire to refinance their loans through a 12-month loan term to pay off Brooklyn Lender's outstanding claims, (*id.* at 17-1). Reversing the relevant transactions over a year later – after the D & W Debtors have presumably already satisfied their obligations to Maguire, as well as paid off their outstanding claims to Brooklyn Lender – would plainly require the unraveling of intricate transactions. *See Chateaugay III*, 10 F.3d at 953 (reasoning that equitable mootness applies when granting relief could threaten to unravel transactions that have already taken place or could otherwise "create an unmanageable, uncontrollable situation for the Bankruptcy Court") (cleaned up).

Further, I am not satisfied that Brooklyn Lender diligently sought a stay of the confirmation of the D & W Plan. As Debtors note, (21-CV-5177 ECF No. 20 at 17), Brooklyn Lender sought a stay without a bond, and proposed an alternative form of security that ultimately sought to "rewrite the plan" by requiring the Debtors to "incur an obligation to it in place of the Maguire exit financing," (21-CV-5177 ECF No. 12-1 at 37:19-38:7), casting doubt on whether Brooklyn Lender had "any desire to have any creditor paid in these cases except themselves," (*id.* at 42:23-43:1). Judge Drain made clear to Brooklyn Lender that under the case law, if it sought to proceed without a bond, it was required to demonstrate why the Court should deviate from the full security requirements normally imposed. (*Id.* at 35:16-36:3 ("The case law is clear that if the movant seeks imposition of a stay without a bond, the applicant has the burden of demonstrating why a Court should deviate from the ordinary formal security requirement.").) Brooklyn Lender, however, failed to provide any reason for why it sought to deviate from the ordinary bond requirement. And, as I stated in my judgment denying the motion to stay, the alternative security Brooklyn Lender proposed was "essentially another way for it to make

money from the[] [D]ebtors" by offering to assume the role of financier for the exit plan.  (21-CV-5177 ECF No. 24 at 18:13-19.)  Brooklyn Lender may have technically sought a stay but, as Judge Drain found, it was "simply not a serious proposal."  (21-CV-5177 ECF No. 12-1 at 42:1-2.)  I cannot say that Brooklyn Lender *diligently* sought a stay where it would only agree to secure the D & W Debtors' interest if it meant generating money for itself.

Further, even if Brooklyn Lender had been diligent, the law in the Second Circuit is clear that a party must satisfy all five of the *Chateaugay II* to rebut the presumption of equitable mootness.  *See In re Windstream Holdings*, 838 F. App'x at 636; *see also In re Delta Air Lines, Inc.*, 374 B.R. 516 at 524 ("But the appellants' diligence alone is insufficient to avoid equitable mootness in light of the unavailability of effective relief and the other considerations discussed above.").  Brooklyn Lender has failed to do so.

C.     <u>53 Stanhope Plan</u>

Third, I consider whether the appeal of the 53 Stanhope Plan is equitably moot.  On appeal, Brooklyn Lender seeks reversal because the plan applies the Bankruptcy Court's allegedly erroneous denial of default interest in the February 19, 2021 bench ruling and order.  (21-cv-5867 ECF No. 7 at 4.)

For the same reasons provided in Section III.A, I find that this appeal is equitably moot because, should Brooklyn Lender seek payment of the default interest through alternative methods of relief, it would jeopardize the Debtors' reemergence.  Additionally, should Brooklyn Lender seek to unwind the 53 Stanhope Plan in its entirety, it would require the unraveling of the sales of the 13 properties associated with the 53 Stanhope Plan, which would constitute the unraveling of intricate transactions that were green-lit in March 2022.  (*See* Bankr. ECF Nos. 384-392.)  Further, Brooklyn Lender has not argued that the affected third parties, the buyers of

the properties, were notified and able to participate in the appeal.  By failing to meet the

*Chateaugay II* factors, Brooklyn Lender cannot rebut the presumption of equitable mootness.

Accordingly, the Court dismisses the appeals as equitably moot

## IV.    CONCLUSION

For the foregoing reasons, Brooklyn Lender's appeals are DENIED as equitably moot.

The Clerk of Court is respectfully directed to close the above-captioned cases.

**SO ORDERED.**

Dated:  August 1, 2022
            White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.